A97A0060. FUSSELL v. JIMBO'S LOG KITCHEN, INC.
(489 SE2d 71)

RUFFIN, Judge.

Linda J. Fussell sued Jimbo's Log Kitchen, Inc. ("Jimbo's") for personal injuries sustained when she slipped and fell on Jimbo's

---

property. The trial court granted summary judgment to Jimbo's, and Fussell appeals. For reasons which follow, we reverse.

Summary judgment is appropriate when the court, viewing all the evidence and drawing all reasonable inferences in a light most favorable to the nonmovant, concludes that the evidence does not create a triable issue as to each essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). "A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. [Cit.]" Id.

Viewing the evidence favorably to Fussell, the record shows the following. At about 12:00 p.m. on the day of the accident, Fussell and her husband went to Jimbo's, a local restaurant in Valdosta, Georgia, for lunch. Although it rained earlier that morning, the rain stopped by lunchtime. Fussell testified, however, that the streets were still wet from rain when they arrived at Jimbo's.

The Fussells approached the restaurant on a wooden walkway leading from the parking lot. The conditions on the walkway were "not good" because the boards were wet, slippery, and in disrepair. Nevertheless, the Fussells traversed the wooden walkway without incident and ate lunch in the restaurant. Upon leaving, however, they decided not to use the walkway because of its bad condition. Instead, they approached the parking lot via an asphalt handicap ramp. As Fussell started down the ramp, the heel of her right shoe caught in a crack on the ramp, and her left foot slipped from under her. She fell on the ramp and heard a bone pop on her right side. According to Fussell, the ramp was slippery at the time of her fall. She further testified that if her left foot had not slipped on the ramp, she would not have fallen.

In the ambulance on the way to the emergency room, the attendant remarked that Fussell had little chicken feathers on her clothes. Mr. Fussell testified that he also saw chicken feathers on his wife's clothing and noticed feathers on the handicap ramp while he was assisting her on the ground after the fall. The record reveals that Jimbo's housed several chickens in a chicken coop on the premises.

Prior to Fussell's fall, Jimbo's had never received any complaints regarding slip and fall incidents on the handicap ramp and was not otherwise aware of any other incidents or complaints. Jimbo's similarly had not received any complaints about the safety of the ramp and was not aware of any dangerous condition, including any alleged

danger caused by chicken feathers. The record reveals that Jimbo's swept the sidewalks and handicap ramps on its premises daily. Jimbo's president further testified that on the day of Fussell's fall, and in accordance with Jimbo's policy, the handicap ramps and sidewalk areas on the premises were swept between 10:00 a.m. and 11:00 a.m.[1] At that time, no chicken feathers or other debris were present in the area where Fussell fell.

Fussell sued Jimbo's for injuries sustained in the fall, alleging that Jimbo's negligence and failure to maintain the premises in a safe condition caused her to slip on wet chicken feathers. Thus, she contends that a foreign substance caused her fall, rather than a crack in the pavement or other static condition. To support her claim, Fussell must show "(1) that [Jimbo's] had actual or constructive knowledge of the foreign substance and (2) that [she] was without knowledge of the substance or for some reason attributable to [Jimbo's] was prevented from discovering the foreign substance." *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980). Fussell argues on appeal that the trial court improperly granted summary judgment to Jimbo's. We agree.

1. In its summary judgment order, the trial court focused on Fussell's knowledge of the hazard, concluding that Fussell's knowledge was greater than Jimbo's and that she failed to exercise ordinary care for her own safety. Viewing the evidence favorably to Fussell, however, we find that fact issues remain as to her knowledge and exercise of ordinary care.

(a) We note initially that the parties dispute whether the chicken feathers caused Fussell's fall. The trial court found, and Jimbo's argues, that Fussell presented no evidence supporting her allegation that she slipped on chicken feathers. According to Jimbo's, rainwater and a crack in the pavement caused the fall and Fussell had equal knowledge of these hazards. Viewing the evidence favorably to Fussell, however, we find that a question of fact remains regarding the cause of Fussell's fall. As revealed by her deposition, Fussell cannot pinpoint what caused her to fall on the ramp. Asked whether she slipped on chicken feathers, Fussell testified that she does not know; she knows only that "[she] slipped on this ramp, and that it was slippery. . . ." The record also shows, however, that Fussell's clothing was covered with chicken feathers after the fall and that her hus-

---

[1] Jimbo's president submitted an affidavit stating when the handicap ramp was swept on the day of Fussell's fall. We note that the affidavit in the record is incomplete. In particular, the signature page is missing. Fussell, however, has judicially admitted in her brief that Jimbo's president "testified that the handicap access ramp was swept on the morning of [her] fall, between 10:00 a.m. and 11:00 a.m." See *Thorp v. State of Ga.*, 217 Ga. App. 275, 276 (1) (457 SE2d 234) (1995).

band noticed feathers on his clothes and on the ramp while helping her on the ground.

"The existence of [chicken feathers on the ramp] was otherwise shown by direct evidence[,] and the circumstantial evidence [that both Fussell and her husband noticed feathers on their clothes following the fall] would authorize a finding that [the feathers were] the cause of [Fussell's] fall. Thus, construing the evidence most favorably for [Fussell] and most strongly against [Jimbo's], a genuine issue of material fact remains" as to the cause of Fussell's fall. *Bramblett v. Hansel-Scales, Inc.*, 200 Ga. App. 722, 723 (2) (409 SE2d 280) (1991). Compare *Kenny v. M & M Supermarket*, 183 Ga. App. 225, 226 (358 SE2d 641) (1987) ("Considering the ultimate fact that [plaintiff] testified in her deposition that she did not see any [slippery] substance, did not feel it or experience it on her clothing and did not inspect the floor after her fall, leads inescapably to the conclusion that only a fall was involved. . . .").

(b) The record raises further questions as to whether Fussell knew or should have known about and avoided the hazard. "The customer must exercise ordinary care for [her] own safety, and must by the same degree of care avoid the effect of the merchant's negligence after it becomes apparent to [her] or in the exercise of ordinary care [she] should have learned of it. [She] must make use of all [her] senses in a reasonable measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to [her]." (Citations and punctuation omitted.) *Alterman Foods*, supra at 623. Yet, " '[l]ooking continuously, without intermission, for defects . . . is not required in all circumstances. What is a reasonable lookout depends on all the circumstances at the time and place.' [Cit.]" *Newell v. Great A & P Tea Co.*, 222 Ga. App. 884, 885 (1) (476 SE2d 631) (1996).

In an effort to show superior knowledge and lack of ordinary care by Fussell, Jimbo's points to the following passages from her deposition. Asked whether she was looking down or ahead of her while descending the ramp, Fussell replied, "I was just looking straight on like anyone else leaving anywhere, you know." Fussell also testified that, although she did not notice any cracks in or chicken feathers on the handicap ramp at the time she fell, nothing on the ramp would have prevented her from seeing cracks or chicken feathers had she been looking. Fussell further admitted that concrete and other surfaces are more slippery when wet and that handicap ramps are sloped.

Despite this testimony, we conclude that Jimbo's was not entitled to summary judgment based upon Fussell's alleged knowledge and lack of ordinary care. Although Fussell admits that she was not looking down at the time of the fall, she also testified that she "pay[s]

attention where [she] walk[s] and was very cautious. . . . [She] even had hold of [her] husband's arm, being very cautious, and [her fall] just happened." In addition, she testified that she has never considered whether "an inclined surface is going to be more slippery than a flat surface as a general rule. . . ." Under these circumstances, we do not find that, as a matter of law, Fussell descended the ramp in an unreasonable manner.

Furthermore, even if, as the dissent argues, Fussell should have known that chicken feathers were on the ramp, such knowledge would not entitle Jimbo's to summary judgment. We have previously found that the hazard presented by a wet, sloping handicap ramp is not, in all situations, a "patently open and obvious condition which could have been discovered through the exercise of ordinary care." (Punctuation omitted.) *Metromedia Steakhouses Co. v. Ray*, 219 Ga. App. 716, 718 (2) (466 SE2d 618) (1995). In *Metromedia*, for example, we concluded that a jury should decide whether the customer, who had not previously traversed the ramp in the rain, exercised ordinary care. Id.

The record in this case reveals that Fussell had never before visited Jimbo's and that she entered the restaurant by a wooden walkway, rather than the asphalt handicap ramp. Furthermore, the allegedly slippery surface was not simply a wet ramp, but a wet ramp covered with little chicken feathers. The record presents no evidence that, as a matter of law, the hazard allegedly posed by the chicken feathers on the wet ramp was a condition about which Fussell should have been aware, even if she had seen the feathers. Accordingly, a jury question remains as to Fussell's knowledge of the hazard and her exercise of ordinary care. See id.

2. Questions of material fact similarly exist regarding Jimbo's knowledge of the claimed hazard. On appeal, Fussell assumes "arguendo" that Jimbo's did not have actual knowledge of the hazard. Liability, however, may be based upon a proprietor's constructive knowledge of the hazard, which is established by showing either that: "(1) an employee of the proprietor was in the immediate area of the hazard and had the means and opportunity to easily see and remove it; or (2) the proprietor failed to exercise reasonable care in inspecting the premises. [Cit.]" *Newell*, supra at 886.

Traveling under the constructive knowledge theory, Fussell claims that Jimbo's failed to reasonably inspect the premises. Recovery based upon lack of reasonable inspection requires proof of the length of time the dangerous condition was allowed to exist before Fussell's fall. *Daniel v. John Q. Carter Enterprises*, 218 Ga. App. 223, 224 (460 SE2d 838) (1995). On summary judgment, however, Fussell need not present evidence establishing the length of time the substance was on the ground *until* Jimbo's produces evidence of a rea-

sonable inspection. Id. at 225. "In seeking summary judgment, [Jimbo's] has the initial burden of showing that this theory of recovery is not viable by demonstrating that it exercised reasonable care in inspecting the premises. [Cit.] This burden may be carried by evidence of compliance with reasonable inspection procedures. [Cit.] . . . Once [Jimbo's] demonstrates a lack of actionable constructive knowledge by compliance with reasonable inspection procedures, the burden shifts back to [Fussell] to show how long the foreign substance had been allowed to remain on the [ground]. [Cit.]" Id. at 224-225.

The record establishes that Jimbo's swept the handicap ramp and sidewalk areas on its property "daily" and that, pursuant to this policy, the handicap ramp was swept on the day of Fussell's fall between 10:00 a.m. and 11:00 a.m. At that time, no chicken feathers or other debris were on the handicap ramp where Fussell fell.

This evidence does not, as a matter of law, establish that Jimbo's reasonably inspected the premises. We recognize that "a proprietor is under no duty to patrol the premises continuously in the absence of facts showing that the premises are unusually dangerous." (Citations and punctuation omitted.) *Barker v. Shoney's, Inc.*, 222 Ga. App. 387, 389 (474 SE2d 284) (1996). The record reveals that Jimbo's was not aware of any dangerous condition on the handicap ramp. Reasonable minds could differ, however, as to whether a once-a-day sweeping of the ramp possibly completed over two hours before Fussell fell conforms with a "reasonable inspection" of the premises. Accordingly, a jury question remains regarding Jimbo's knowledge of a hazard on the handicap ramp.

*Judgment reversed. Pope, P. J., Johnson, Blackburn, JJ., and Senior Appellate Judge Harold R. Banke concur. Andrews, C. J., and Birdsong, P. J., dissent.*

BIRDSONG, Presiding Judge, dissenting.

Because the majority's misapplication of law to the facts of this case has made appellee Jimbo's Log Kitchen an insurer of the safety of appellant Fussell, contrary to the long-standing legal precedent of this state, I am compelled to dissent.

The majority correctly recounts that appellant Fussell admitted in her deposition testimony that she was not looking down at the ramp as she descended it; rather she "was just looking straight on like anyone else leaving anywhere." At the time she "knew *everything* was slippery so [she] was trying to be as cautious as [she] could"; she was holding her husband's arm. (Emphasis supplied.) Her fall was caused when her right heel caught on something, which, due to the marks on the heel of her shoe, she believed was a crack in the concrete; simultaneously her left foot slipped out from under her. She did

not see any chicken feathers on the wooden walkway when she entered the premises, although she saw some feathers on the leaves off of the walkway; neither did she see any cracks or chicken feathers on the handicap ramp as she attempted her exit. Appellant further testified that she does not know whether she slipped on chicken feathers; all she knows is that the ramp was slick and she slipped. Even on her earlier entry into the building she realized that the wooden plank was "abnormally slippery," whether it was chicken excrement draining from the coop or some other substance. While she knew everything was slippery, she concluded it would be safer to go down the concrete ramp rather than the wooden one. She further admitted in her deposition that had she been looking for such conditions nothing existed at the scene of her fall to prevent her from seeing either the crack in the concrete (which she speculates is the condition which caused her right foot to catch going down the ramp) or chicken feathers on the handicap ramp if such were present.

While it is true that the presence of a wet, sloping ramp does not per se present in all circumstances a patently open and obvious condition which could have been discovered through the exercise of ordinary care, this is not the situation before us in this case. Appellant has admitted in her testimony that had she looked she could have seen any chicken feathers on the ramp or the cracks in the concrete; by her own testimony she has in essence conceded that the circumstances which she avers combined to cause her fall were open, obvious and capable of detection if one only was looking for such conditions. (Any other testimony contained in appellant's deposition which is inconsistent, directly or indirectly, with her testimony, as above discussed, would compel the invocation of the rule pertaining to inconsistent testimony set forth in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680); appellant has not offered any reasonable explanation for any potentially inconsistent deposition testimony by her regarding these material matters.)

Assuming without deciding that the facts of this case present a scenario requiring application of a foreign substance (rather than the static condition) legal model, the proper test to apply would be that stated in *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327): "[T]o state a cause of action . . . where the plaintiff alleges that due to an act of negligence by the defendant he slipped and fell on a foreign substance on the defendant's floor, the plaintiff must show . . . (2) that the plaintiff was without knowledge of the substance or for some reason attributable to the defendant was prevented from discovering the foreign substance." Appellant has unequivocally testified that nothing prevented her from seeing either the feathers or the concrete cracks in the ramp. To show that she was without knowledge of the substance, appellant/plaintiff, under the *Alterman Foods*

foreign substance model, "must also show that [s]he was without knowledge of its presence." Id. To make this latter showing, a " ' "customer must exercise ordinary care for his own safety, and must by the same degree of care avoid the effect of the merchant's negligence after it becomes apparent to him *or in the exercise of ordinary care* he should have learned of it. He must make use of all his senses in a reasonable measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to him." ' " (Emphasis supplied.) Id. The majority pays lip-service to the *Alterman Foods* model but seeks to circumvent its effect by citing the ancillary rule that a customer is not required to look continuously, without intermission, for defects. See generally *Newell v. Great A & P Tea Co.*, 222 Ga. App. 884 (476 SE2d 631). This rule is not applicable under the facts here attendant. Appellant has admitted that she was fully aware of the slippery conditions existing throughout the area leading to and from the premises; in fact, it was this knowledge which prompted her to select an exit route which she concluded would not be as dangerous to her as again traversing the wooden ramp and walkway. She nevertheless was fully aware of the slippery conditions as unequivocally evidenced by her testimony that she was holding her husband's arm and proceeding as cautiously as she could. Under these known conditions, appellant had the duty to remain alert and to remain on continuous look-out where she was walking in order to protect her own safety; this duty was not negated merely because she elected to hold her husband's arm; rather this unrefuted recognition of the slippery conditions merely increased the degree of alertness which a reasonably prudent person would exercise for their safety. It is well established that an invitee must use all his or her senses in a reasonable manner amounting to reasonable care to discover the presence of and to avoid a dangerous condition. *Baker v. Winn-Dixie Stores*, 219 Ga. App. 513, 514 (465 SE2d 710), citing *Alterman Foods*, supra. This appellant has conceded by her own deposition testimony that she failed to do. "[A] grant of summary judgment must be affirmed . . . if it is right for any reason." *Newsome v. Dept. of Human Resources*, 199 Ga. App. 419, 423 (3) (405 SE2d 61). By their holding, a majority of my colleagues have in effect made the proprietor an insurer by not requiring an invitee to be vigilant when fully aware of the existence of dangerous conditions on the premises.

The majority's reliance on *Daniel v. John Q. Carter Enterprises*, 218 Ga. App. 223 (460 SE2d 838), is misplaced on two grounds. First, appellant has failed as a matter of law to meet the second prong of the foreign substance test of *Alterman Foods*, supra; *Daniel*, supra, addresses itself to constructive knowledge under the first prong of the test. Secondly, the continued viability of *Daniel*, supra, regarding burden of proof in summary judgment cases is highly questionable

and will need to be re-visited by this Court in futuro. See generally *Blake v. Kroger Co.*, 224 Ga. App. 140, 147 (480 SE2d 199) (Andrews, J., concurring specially).

Thus, I must respectfully dissent. I am authorized to state that Chief Judge Andrews joins in this dissent.

DECIDED JULY 9, 1997 —

*Mark A. Gilbert, William R. Folsom*, for appellant.
*Young, Thagard, Hoffman, Scott & Smith, Henry P. Scott*, for appellee.