A97A2151. JORDAN v. ATLANTA REPLEX CORPORATION.
(492 SE2d 536)

ELDRIDGE, Judge.

On January 8, 1995, Willie Jordan, the plaintiff and appellant, went with her family to the defendant's[1] ice skating rink to skate. When plaintiff arrived, the rink was in use for a hockey practice which was running late, and plaintiff had to wait to skate. No one was allowed on the ice to skate until the hockey team finished their practice; at that time, the public, including the plaintiff, was allowed on the ice. Plaintiff had never ice skated prior to that day. Plaintiff began skating as soon as the ice rink was opened to the public shortly after 6:45 p.m. Plaintiff's injury occurred around 7:30 p.m., after plaintiff had been skating about 30 minutes.

While skating, plaintiff felt her foot jerk, causing her to fall. Plaintiff described the fall as her toe catching and being grabbed and twisted around.

Aaron Jordan and William Pelham looked for the cause of plain-

---

[1] Atlanta Replex Corporation d/b/a Atlanta Ice Forum d/b/a Atlanta Ice Plex.

tiff's fall and found a hole in the ice about two or three feet from her. The hole was grayish-white, ragged edges, two or three inches in diameter, about an inch in depth, and had a jagged ice skate mark coming out of the hole, which was filled with mushy ice and water; the hole had slush built up around the edges as if someone had skated into the hole, knocking slush out. Ice was stuck in the front tip of plaintiff's skate. Unless someone was looking for the hole in the ice, it was not readily observable. Aaron Jordan stated his opinion that, based on the size of the hole, position of the hole and the plaintiff, and the ice in the toe of her left skate, plaintiff had tripped in the hole.

At the time of plaintiff's injury, Salim Barday was working at the ice rink as assistant manager. After plaintiff's fall, he inspected the ice in the area of the fall and did not find any hole in the ice. However, Mr. Jordan testified that he showed the hole to a skate monitor, who then covered the hole with a warning cone.

The plaintiff's family testified that the general condition of the ice surface was poor, in that there were a number of tiny little holes or divots in the surface and slushy areas. After the plaintiff was removed from the ice, the ice then was resurfaced.

Barday and Robinson (the manager) testified that the ice rink surface is resurfaced just before each new skating session. The ice surface is about five to five and one-half inches of frozen sand with about two to two and one-half inches of ice on top. A skate guard or ice monitor continuously looks for holes or rink defects. Prior to resurfacing the ice, the surface is inspected by walking the rink and any "snow," i.e., shaved ice on the rink surface, is removed by running the Zamboni over it; if any big holes in the ice are found, then the hole is packed with snow. A hole an inch deep and two inches across is considered a small hole and can be easily repaired with a snow packing. A hole more than an inch deep would be very unusual. To resurface, the surface is shaved, watered, and allowed to freeze. To resurface and inspect takes only about ten minutes. The normal resurfacing schedule is after about 20 minutes for public or hockey sessions, in the middle of a session, and every 40 minutes for figure skating. A resurfaced ice rink allows skaters to glide better and is safer.

Barday does not recall if the rink was resurfaced between the hockey session and the public session, which would have been the normal thing to do. However, if the hockey practice ran late, then the ice is inspected only, and if the surface is deemed satisfactory, then the resurfacing is delayed. Barday does not remember inspecting the ice immediately prior to plaintiff's fall. An employee of the defendant told the family immediately after the fall that the ice rink had not been inspected or resurfaced after the hockey practice, because the

practice had run late. Such inspection could have been done by the ice monitor after the rink had been cleared of the hockey team, which inspection would take five minutes to do. There are two ice monitors on the ice at all times who control conduct and look for debris and holes.

Stacey Kingry was the employee of the defendant who filled out an accident report for plaintiff based upon what the plaintiff and plaintiff's family told her. She never saw the hole in the ice or looked for it and was not told by any other employee that there was a hole.

On January 8, the rink would normally have been resurfaced prior to the start of hockey practice at 5:00 a.m.; from opening until 12:45 p.m., the resurfacing would be on the request of the user, the Georgia Amateur Hockey Association. Between 12:45 and 1:00 p.m., the rink would be resurfaced before public use, which ran from 1:00 until 3:00 p.m. with a resurfacing occurring at 1:55 p.m. Between 3:00 and 3:30, the ice would again be resurfaced, and again around 4:25, 5:30, and 6:40 p.m. Between 5:40 and 6:20 or 6:30 p.m., introductory hockey was held, when children were taught to play ice hockey. From 6:40 to 8:30 p.m. was a public session, when the public could skate and no figure skating or ice hockey practice took place at the same time. From 8:40 until 10:30 p.m. was the Co-ed Hockey League, when adults could play ice hockey.

Charles Robinson worked as the assistant manager of the Mountain Ice Chalet at Stone Mountain Memorial Association Park, which qualified him as an expert witness by experience on the operation and maintenance of an ice rink. He was working for the defendant as manager at the time of plaintiff's injury. According to Robinson, it is common and standard practice to inspect and resurface the ice after a hockey practice and prior to public admission. The reason to resurface the ice is to make the surface smooth and safe for skating. A rink should be resurfaced after a hockey practice and every hour to maintain a smooth surface.

At the time when plaintiff fell, the ice rink was crowded with between 200 and 300 skaters. Plaintiff was not looking at the ice in front of her while she skated and never saw the hole in the ice, because she could not skate while looking down, and with the number of skaters on the ice, she had to look out for other skaters.

Plaintiff sued defendant for injuries caused by the fall. Defendant answered and filed a motion for summary judgment. The trial court granted summary judgment. Plaintiff filed a timely notice of appeal.

Plaintiff's enumeration of error is that the trial court erred in granting summary judgment. We agree.

Under *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), on motion for summary judgment, the trial court must give

the plaintiff the benefit of all reasonable, favorable inferences, and the burden to produce evidence does not shift to the plaintiff unless or until the defendant pierces the allegations of plaintiff's complaint by producing evidence that either shows that the facts alleged are not true, i.e., negates such essential elements, or shows that the plaintiff can produce no evidence to demonstrate the existence of such essential elements. OCGA § 9-11-56 (e). "Summary judgment is appropriate [in trip and fall cases] when the court, viewing all the evidence and drawing reasonable inferences in a light most favorable to the non-movant [plaintiff], concludes that the evidence does not create a triable issue as to each essential element of the case. [*Lau's Corp.*, supra.]" *Jenkins v. Bi-Lo*, 223 Ga. App. 735 (479 SE2d 14) (1996).

(a) This is a negligent maintenance case, because this case involves the alleged failure of the defendant to properly maintain its ice rink's surface in a condition that is safe and free of holes in the ice. "Because the defendant [deferred resurfacing the ice] or authorized the [failure to resurface the ice, it] is presumed to have knowledge of [the ice surface's condition]. See *American Nat. Bank [of Brunswick] v. Howard*, 117 Ga. App. 834 (161 SE2d 838) (1968). In this type of case, the plaintiff [made] out a cause of action by showing an act or omission on the part of the defendant which was the proximate cause of [her] injury[, and when the defendant raised an affirmative defense and made out the elements of the prima facie defense, the plaintiff showed that she] could not have . . . avoided [such negligence] . . . through the exercise of ordinary care. See *Hogg v. First National Bank [of West Point]*, 82 Ga. App. 861 (62 SE2d 634) (1950). The weight of authority in cases where the plaintiff slips and falls, allegedly due to the defendant's negligence in maintaining a [dangerous ice surface], is that proof of nothing more than the occurrence of the fall is insufficient to establish the proprietor's negligence. [Cits.] . . . What the law requires is not warranty of the safety of everybody from everything, but such diligence toward making the [ice rink] safe as a good business man is in such matters accustomed to use. [Cits.] Thus the plaintiff must, at a minimum, show that the defendant was negligent either in the materials [it] used in treating the [ice rink] or in the [failure to resurface the rink]. . . . Defendant introduced testimony of [the assistant manager] who had examined the [ice rink surface some time] after plaintiff's fall and who found [no hole in the ice] nor any other defect in the [ice]. Defendant also introduced evidence that the [ice rink] had been [resurfaced prior to the hockey practice at 4:50 p.m.] prior to plaintiff's fall and had been trafficked [from 5:00 until 7:30 p.m.] by other [skaters]. Defendant's evidence was sufficient to pierce the pleadings of the plaintiff and to shift the burden to her to produce issuable evidence or suffer judgment. See

*Meade v. Heimanson*, 239 Ga. 177 (236 SE2d 357) (1977)." (Punctuation omitted.) *Alterman Foods v. Ligon*, 246 Ga. 620, 624-625 (272 SE2d 327) (1980).

While both Barday and Robinson testified that it was normal to inspect and resurface the ice for safety reasons between the hockey practice and the public session, they had no knowledge of whether or not it had been done on January 8 between the sessions at 6:45 p.m. They testified that the ice surface needed to be resurfaced about every 20 to 40 minutes, but if the hockey session ran late, then the resurfacing would be deferred until later, after a standard inspection had been made for holes. They had no knowledge of whether or not such inspection had, in fact been made, and none of the skating monitors testified. In his deposition, Barday testified that he could not recall whether or not the ice rink had been resurfaced between 5:30 and 6:45 p.m. If the last resurfacing of the ice was done at 5:30 and the fall occurred at 7:30 p.m., then the delay in resurfacing exceeded the time period set by the defendant by 80 to 100 minutes.

However, in his affidavit, Robinson, who was not at the rink at the time of the fall testified that "Mr. Barday and Stacey Kingry indicated to me that *they believed* the ice had in fact been resurfaced prior to the free skate." (Emphasis supplied.) Such statements are hearsay and lay opinions without a factual predicate, which required the trial judge to disregard this testimony on summary judgment. OCGA § 24-9-65; *O'Kelley v. State*, 175 Ga. App. 503, 507 (3) (333 SE2d 838) (1985); *Leonard v. State*, 157 Ga. App. 37, 38 (1) (276 SE2d 94) (1981).

Barday testified both by affidavit and by his deposition that, upon inspection, he could not find the hole that plaintiff allegedly tripped in. Since the plaintiff, herself, did not know why she fell and never saw the hole, then this shifted the burden of producing evidence to the plaintiff.

If the plaintiff did not know the cause of her fall and could not present evidence to create a material issue of fact as to the cause of her fall and demonstrate that such cause was the consequence of a breach of duty of the owner/occupier, then the grant of summary judgment to the defendant would be appropriate. See *Alterman Foods v. Ligon*, supra at 624; see also *Boyd v. Garden Center*, 197 Ga. App. 198, 200-201 (3) (397 SE2d 626) (1990); *Brown v. RFC Mgmt.*, 189 Ga. App. 603, 605 (376 SE2d 691) (1988); *Key v. J. C. Penney Co.*, 165 Ga. App. 176, 177 (299 SE2d 895) (1983); *Food Fair v. Mock*, 129 Ga. App. 421, 423 (199 SE2d 820) (1973); *Lewis v. Drake*, 116 Ga. App. 581, 582 (158 SE2d 266) (1967).

Plaintiff met her burden of producing evidence that created material issues of fact for the jury to decide. See OCGA § 9-11-56 (e). First, the testimony of plaintiff's witnesses described her prone posi-

tion on the ice as being three feet beyond a three inch wide hole, one inch deep, in the ice; skate marks that went through the hole; slush that had been knocked out of the hole and around the edge; and ice found in the left toe of plaintiff's ice skate, which was consistent with catching the skate in the hole. Mr. Jordan, a lay witness, after stating the foundational facts upon which his opinion was based, stated his opinion that the plaintiff had tripped on the hole. Plaintiff's testimony that something seemed to grab her left leg as she was skating and caused her body to twist around so that she fell on her back is consistent with catching the toe of the skate in the hole. These facts created a jury question as to the existence of the defect, a hole in the ice, and causation of the injury. Second, the testimony of plaintiff's family as to the existence of the hole in the ice created a conflict of material fact with Barday's testimony that he could not find a hole. Third, the plaintiff's family testified that there had been no resurfacing of the ice from the time of their arrival after 6:00 and their being allowed on the ice after 6:45 p.m., and that the condition of the ice at that time was poor. This evidence created material issues of fact as to defendant's lack of proper maintenance and the proximate cause of plaintiff's fall.

Finally, testimony as to the defendant's usual, normal, or customary practice regarding inspection and resurfacing is not evidence that such maintenance actually occurred on January 8. Such evidence was a form of opinion testimony as to what possibly occurred. Absent testimony that the delay in resurfacing was, in fact, preceded by an inspection of the ice for holes by the ice monitors, such evidence. is merely an inference of fact based upon custom and practice. Such favorable inference cannot be made for the defendant as all inferences drawn must be favorable to the plaintiff, as the non-movant. The reasonable inference, therefore, would be that no inspection was made, based on the existence of the hole and other defects in the ice.

The trial judge erred in granting summary judgment on the basis that plaintiff failed to produce evidence creating a material issue of fact as to breach of defendant's duty and causation of plaintiff's fall. The trial judge cannot make findings of fact on a motion for summary judgment by picking and choosing which evidence he will believe and by deciding that there is no evidence showing causation, when there is contrary evidence in the record; the jury must make a determination of weight and credibility as to disputed facts, as well as to opinion evidence. There was evidence creating jury issues as to breach of duty and causation. *Union Camp Corp. v. Daley*, 188 Ga. App. 756, 758 (374 SE2d 329) (1988); *Pembrook Mgmt. v. Cossaboon*, 157 Ga. App. 675 (5) (278 SE2d 100) (1981).

(b) Since review of summary judgment is de novo, then we must determine whether defendant is entitled to summary judgment for

any affirmative defense asserted, even though the trial court did not grant the motion on such basis. The defendant has the burden of proof of an affirmative defense at trial as well as on summary judgment. To prevail on summary judgment, the defendant must prove each and every essential element of such defense before the burden to produce evidence shifts to the plaintiff. See *Continental Research Corp. v. Reeves*, 204 Ga. App. 120, 127 (419 SE2d 48) (1992); *Begin v. Ga. Championship Wrestling*, 172 Ga. App. 293, 294 (322 SE2d 737) (1984); *Pound v. Augusta Nat.*, 158 Ga. App. 166, 167 (279 SE2d 342) (1981); *Hunt v. Thomasville Baseball Co.*, 80 Ga. App. 572, 573 (56 SE2d 828) (1949).

(c) 1. Contributory negligence.

Under the evidence presented by the plaintiff, the hole was white or grayish-white and looked much like the ice. Prior to the slush being knocked out, the hole was filled with slush and water so that it may be reasonably inferred that there was no depression in the ice which would indicate the presence of a hole beneath the slush. Both of these facts and reasonable inferences made thereon indicate that the hole was not readily discoverable; the witnesses found the hole only after searching for it. Following plaintiff's fall, the hole was discoverable, because the slush had been knocked up on the sides of the hole when plaintiff had skated across it. The hole was so difficult to discover that Barday, the assistant manager, never found it, even after the area was pointed out to him. Furthermore, the ice rink was crowded with between 200 and 300 people; skating faster than a walk made observing the ice ahead difficult to do, particularly with that number of people on the ice. The presence or absence of the hole is a jury question, because there exists a conflict in the evidence between the evidence of the plaintiff and the evidence of the defendant, which cannot be decided by either this Court or the trial court as was done by the trial court and which creates a material issue of fact for jury determination, because the trier of fact must decide the weight and credibility to give to the evidence to determine whether or not a hole existed in the ice. There are several reasonable inferences that may be drawn from the testimony of Barday: (1) that there was no hole; (2) that he did not make a thorough search to discover the presence of the hole; or (3) that the ice monitor who placed the cone over the hole came back and repaired the hole by filling it with shaved ice to repair the hole prior to resurfacing the ice before Barday made his search. The trial court and this Court on de novo review must make the inference most favorable to the plaintiff, *Lau's Corp.*, supra at 491, which would require the denial of the motion for summary judgment.

The defendant presented no evidence that plaintiff failed to exercise ordinary care for her own safety so that she could have avoided

the hole; the hole was camouflaged by slush and by its color. *Leonard-son v. Ga. Power Co.*, 210 Ga. App. 574, 576 (436 SE2d 690) (1993); *Edwards v. Trammel*, 187 Ga. App. 22, 24 (369 SE2d 288) (1988); *Whatley v. Henry*, 65 Ga. App. 668, 673-674 (6) (16 SE2d 214) (1941). For plaintiff to be held to be contributorily negligent, plaintiff must have had an opportunity to avoid the result of the defendant's negligence, which means plaintiff knew or should have known of the danger and failed to avoid it when given the opportunity to avoid. *Nelson & Budd, Inc. v. Brunson*, 173 Ga. App. 856, 857 (3) (328 SE2d 746) (1985); *Moore v. Price*, 158 Ga. App. 566, 568-570 (2) (281 SE2d 269) (1981). There has been no evidence which shows that plaintiff knew of or could have reasonably discovered the hole, or that she had the opportunity to avoid it; therefore, summary judgment on this basis would have been error.

(c) 2. Assumption of the risk.

As a first time ice skater, plaintiff may be inferred to have been aware of at least two dangers from the common experience of a reasonably prudent person: (1) the slipperiness of the ice surface; and (2) danger of collision with other skaters. There was no evidence in the record that a first time skater should have known that the ice skating surface of the rink, if not timely resurfaced, would contain cracks, holes, pits, or defects in the surface or that a first time user would know to look for such defects and appreciate subjectively the danger of such defects. The record shows that she had no actual or subjective knowledge of the danger of tripping on holes in the ice. Absent evidence establishing plaintiff's actual and subjective knowledge of the danger, appreciation of the danger, and a conscious decision to take the known risk of injury, the affirmative defense of assumption of the risk has not been established. *Vaughn v. Pleasent*, 266 Ga. 862, 864 (1) (471 SE2d 866) (1996). Thus, summary judgment could not be granted on this affirmative defense.

*Judgment reversed. Ruffin, J., concurs. Birdsong, P. J., concurs in judgment only.*

DECIDED SEPTEMBER 17, 1997 —
RECONSIDERATION DENIED OCTOBER 2, 1997.

*David L. Whitman*, for appellant.
*Gorby & Reeves, Michael J. Gorby, Amanda H. Burri*, for appellee.