## A09A2248. IMPERIAL INVESTMENTS DORAVILLE, INC. v. CHILDERS.
### (693 SE2d 834)

SMITH, Presiding Judge.

In this trip and fall case, the landowner appeals from a jury verdict and judgment in favor of the plaintiff, contending the trial court erred in denying its motion for directed verdict.[1] Because the plaintiff failed to show that an alleged defect in the premises caused his fall, or that the landlord had a duty to inspect and discover a different alleged defect in the premises, we must reverse.

The plaintiff, Shane Childers, was at a weekend darts tournament held at a hotel owned by defendant Imperial Investments Doraville, Inc. ("Imperial"). On Sunday afternoon, he was watching some friends compete in the hotel ballroom when he noticed that another friend had left the room. Anxious because he wanted to get something out of the friend's truck, Childers left to catch up with him. As he came out of the ballroom, he called to his friend, who turned around. Childers tripped and collided with his friend, and they both fell through a plate glass window, causing serious injuries to Childers's arm.

At trial, Childers agreed that he was making "assumptions about why he fell." While he knew that he tripped, he did not know if he tripped over an object, because "at the time I never did look to see anything I tripped on." He also testified that he had gone in and out of the doorway about 15 times during the weekend, and he agreed from viewing photographs that there was renovation or construction work going on in the hall outside the banquet room, although he had no independent recollection of it. He did recall seeing some tape in the doorway as he exited and "rolls of carpet in the hallways. . . . You had to step through and over stuff just to go back to the dart hall." Childers also noticed that the carpet was "wrinkly," but even after he agreed with his counsel's suggestion, "You know with some precision what you fell over, you don't know exactly and that is how you testified?" he still responded that he did not know if he stumbled over a raised piece of carpet. Childers's counsel then again asked Childers if he "had a pretty good idea what you fell over?" and Childers responded affirmatively, but never testified directly that he knew that he fell over the carpet.

The friend that Childers was trying to catch up with testified that the carpet was "bunched up" and "had duct tape in various

---

[1] The trial court's denial of summary judgment to the landowner "became moot after the case was submitted to the jury and a judgment rendered. [Cit.]" *Fed. Deposit Ins. Corp. v. Gray*, 225 Ga. App. 415, 416 (1), n. 3 (484 SE2d 67) (1997).

spots around that area." However, he did not see what happened, and he did not see what Childers tripped over. Other witnesses did not see the fall, but testified that they observed tape and "bunched up" carpet in the area as they went in and out of the doorway during the weekend.

A representative of Imperial testified that it did not build the hotel; "We bought an existing property." He did not see the bank of windows in the hallway as a danger. He added that they had had no incident involving the windows in 15 years and that he assumed the building met code requirements before it was opened. Nothing was mentioned in the building's regular fire and building inspections. Childers's expert testified that safety glass should have been installed in the original construction, but he agreed that a company that purchases a hotel "has no duty to go through after purchasing the hotel and replace all the glass that was already in the hotel."

Imperial's motions for directed verdict were denied. The jury returned a verdict in favor of Childers, and this appeal followed.

1. We must first consider whether Childers adequately demonstrated that his trip and fall was due to the negligence of Imperial.

> Causation is always an essential element in slip or trip and fall cases. Where the plaintiff does not know of a cause or cannot prove the cause, there can be no recovery because an essential element of negligence cannot be proven. A mere possibility of causation is not enough and when the matter remains one of pure speculation or conjecture and the probabilities are at best evenly balanced it is appropriate for the court to grant summary judgment to the defendant.

(Citations and footnotes omitted.) *Pennington v. WJL, Inc.*, 263 Ga. App. 758, 760 (1) (589 SE2d 259) (2003). See also *Shadburn v. Whitlow*, 243 Ga. App. 555, 556-557 (533 SE2d 765) (2000).

In *Shadburn*, three women were climbing a flight of stairs to a restaurant when one of them, Whitlow, fell and injured the plaintiff. Id. at 555. Both the plaintiff and her other companion believed that the fall "was caused by loose carpeting which they noticed at the top of the stairwell the evening after the fall; however, all three ladies testified that they were not actually certain what caused Whitlow to fall." Id. at 556. We affirmed the trial court's grant of summary judgment because the plaintiff "failed to present any evidence that a condition on the stairs, the loose carpeting, caused Whitlow to fall. The speculation that Whitlow may have tripped on loose carpeting does not sufficiently establish causation. [Cit.]" Id. See also *Avery v. Cleveland Avenue Motel*, 239 Ga. App. 644-645 (1) (521 SE2d 668) (1999) (plaintiff's belief that "worn and frayed carpeting which she

noticed at the top of the stairwell subsequent to her fall" caused her fall was speculation and did not establish causation).

The cases relied upon by Childers share a common factor absent here: some evidence beyond speculation that a condition of the premises *caused* the fall. For example, in *J.H. Harvey Co. v. Reddick*, 240 Ga. App. 466 (522 SE2d 749) (1999), the plaintiff's foot slipped on "something slippery," and as she got up she noticed two scuppernongs[2] on the floor to her left. Id. We concluded that an inference that she slipped after stepping on the scuppernongs was supported by her observation that she stepped in a slippery substance, the proximity of the fruit to her fall, and the fact that a store employee testified that he observed skins rather than whole fruit — thus presumably supporting an inference that she had stepped on and crushed them. Id. at 469 (1) (a). Similarly, in *Fussell v. Jimbo's Log Kitchen*, 227 Ga. App. 161, 163-164 (1) (a) (489 SE2d 71) (1997), the plaintiff did not know if chicken feathers caused her fall, but her "clothing was covered with chicken feathers after the fall and . . . her husband noticed [chicken] feathers on his clothes and on the ramp while helping her on the ground." Id. And in *Jordan v. Atlanta Replex Corp.*, 228 Ga. App. 670 (492 SE2d 536) (1997) (physical precedent only), the plaintiff was skating on the defendant's rink when she felt her foot jerk, "her toe catching and being grabbed and twisted around." Id. at 671. Witnesses found a hole directly behind the plaintiff, skate marks that went through the hole, slush that had been knocked out of the hole, and ice on the toe of the plaintiff's skate. Id. at 674-675. We held that "[t]hese facts created a jury question as to the existence of the defect, a hole in the ice, and causation of the injury." Id. at 675.

In the absence of such evidence directly connecting a defect with the plaintiff's fall, causation is not established. Although Childers argues that because he testified that he "tripped" rather than simply that he "fell" establishes causation, this is not adequate. See *Avery*, supra, in which the plaintiff testified that "her heel caught against the floor" but her conclusion that defective carpeting caused her fall remained speculative and insufficient to support causation. Id. at 644.

Neither Childers nor any other witness observed what caused him to fall, and Childers was unable to describe his fall other than simply to say that he "tripped." He did not say that his toe caught in something yielding that might have been carpet, or on something

---

[2] "Muscadine grapes (*Vitis rotundifolia*, or alternatively, *Muscadiniana rotundifolia*) are often referred to as *scuppernongs*." Poling & Fisk, "Muscadine Grapes in the Home Garden," NC State University Horticulture Information Leaflet (June 2006). They are native to the Southeastern United States and have been cultivated for over 400 years. Id.

slippery or sticky that might have been tape. Neither he nor any other witness described any material such as loose carpet fiber, backing, or adhesive on Childers's shoe or clothing after the fall. They did not describe any fresh tear or scuff marks on nearby carpet or tape, or even that wrinkled carpet or tape was located at the point at which Childers tripped. Childers did not eliminate possibilities such as other obstacles in the area, or his own feet — either from dragging a toe or in reaction to his friend's sudden turn in answer to his call. Under these circumstances, any conclusion that "wrinkly" carpet or duct tape "in the area" caused his fall is merely speculative and cannot support a verdict.

Childers's counsel asserts in his brief that Childers "had 'a pretty good idea' that he tripped over the carpet," but that was not Childers's testimony. He maintained, despite his counsel's repeated attempts to elicit such a conclusion, that he did not know what he tripped over. Childers also attempts to distinguish *Shadburn* because it involved an "elderly, vision-impaired, and possibly drunk" individual who may have simply fallen. Aside from the fact that Childers acknowledged drinking "anywhere from 12-14 beers" on the previous day and "three to four" beers on Sunday, the point of resemblance is not that the plaintiff in *Shadburn* had difficulty seeing or negotiating the stairs due to physical infirmity or impairment, but that she and her companions were unable to say what caused her to fall. The mere existence of a defect in the carpet in the area of her fall could not establish causation. Id. at 557. Similarly, despite valiant efforts of Childers's counsel to establish a causal connection between the carpet or the duct tape in the general area and Childers's fall, he was unable to elicit that crucial testimony.

The trial court therefore erred in denying Imperial's motion for directed verdict on this ground.[3]

2. Imperial's representative testified that he did not know of any problems with the window through which Childers and his friend fell. Childers's expert witness acknowledged that Imperial had no duty to go through the purchased hotel and replace the existing glass. Childers did not present, whether through inspection reports, hotel records, or expert testimony, any evidence that Imperial was ever informed that the glass in the hallway windows was not or should have been safety glass, or that it posed a danger to hotel guests. And the trial court had already granted summary judgment on Childers's negligence per se claim, finding no duty on the part of

---

[3] While Childers also argues that the carpet was not a static defect and the "successful negotiation" rule therefore does not apply, see *Ballew v. Summerfield Hotel Corp.*, 255 Ga. App. 494, 497 (4) (565 SE2d 844) (2002), we need not reach that issue.

Imperial to inspect an existing building and conform it to the latest building code requirements.

Once again, a previous decision of this court is directly on point. In *Zellers v. Theater of the Stars*, 171 Ga. App. 406 (319 SE2d 553) (1984), the plaintiff was leaving an auditorium and attempted to open a glass exit door. His hand slipped from the handle and struck the glass, shattering it. Id. The building code had changed since the construction of the building, requiring safety glass in future installations. Id. at 407 (1). The theater had no actual knowledge that anyone had ever been injured on the premises by a breaking door, but the plaintiffs alleged that the theater failed to exercise ordinary care by maintaining doors constructed of plate glass rather than safety glass, that it failed to inspect the property to discover the danger, and that it failed to warn of the danger. Id.

We rejected that argument, concluding that appellee was not put on notice by the change in the building code that the door constituted a "dangerous location." *Zellers*, supra at 408 (1). We further held that, since

> appellee had no actual knowledge prior to the incident at issue of any glass door in the [auditorium] ever having been broken[,] [t]here is nothing in the evidence to show or indicate the necessity of making such an inspection to ascertain the possible or probable existence of any defect, such as that other people had broken the glass doors. Ordinary diligence, under such circumstances and the facts of this case, did not require an inspection where appellee had no reason to think an inspection was necessary.

(Citations and punctuation omitted.) Id. at 408 (2).

Childers attempts to distinguish *Zellers* by asserting that in that case, "the plaintiff simply failed to see the glass door or glass panels next to it and attempted to walk through the glass barrier," but this incorrectly states the facts. Moreover, glass in a door or doorway is far more likely to be encountered by a hotel guest than a window panel in a hallway, but *Zellers* nevertheless held that, under the circumstances, the plate glass in the door did not constitute a defect or danger in the premises.

Here, Childers has not shown that Imperial had a duty to inspect or replace all the windows in the hallway or that Imperial was put on notice of any hazard in glass already installed when it purchased the building. The trial court therefore erred in denying a directed verdict to Imperial on this ground as well.

3. We need not reach Imperial's remaining enumeration of error. *Judgment reversed. Phipps and Bernes, JJ., concur.*

DECIDED MARCH 9, 2010 —
RECONSIDERATION DENIED APRIL 7, 2010 — 

*Hanks & Brookes, Jerald R. Hanks*, for appellant.
*Terry D. Jackson, Charles M. Cork III, Preyesh K. Maniklal*, for appellee.