**FIRST DIVISION
BARNES, P. J.,
LAND and WATKINS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**October 30, 2023**

# In the Court of Appeals of Georgia

A23A0754. BERRIAN v. MAX GRIN, LLC.

WATKINS, Judge.

Arian Chamea Berrian appeals from an order granting summary judgment in favor of Max Grin, LLC, d/b/a Rigby's Entertainment Complex ("Rigby's"), in Berrian's action to recover damages resulting from a fall at Rigby's. The trial court found that there was no evidence that Rigby's failed to comply with any of its duties under the Roller Skating Safety Act of 1993 (the "Act") or failed to maintain safe premises.[1] For the reasons set forth infra, we affirm.

---

[1] OCGA § 51-1-43.

Viewed in the light most favorable to Berrian, as the non-moving party below,[2] the record shows that on June 10, 2019, Berrian chaperoned a group of middle-school students on a trip to Rigby's. Berrian initially sat in the concession area and watched the students skating. At some point, however, she rented a pair of skates and began to skate over a carpeted area toward the skating rink. Before reaching the rink, Berrian fell on the carpeted area, seriously injuring her elbow.

Berrian sued Rigby's, claiming that a spilled liquid substance on the floor, extremely thread-bare and worn carpet, and defective skates were all factors contributing to her fall. Berrian alleged that Rigby's was negligent in failing to maintain safe premises, provide adequate warnings, and properly maintain and inspect its premises and rental skates.

The trial court granted summary judgment in favor of Rigby's, finding that it had properly posted all necessary notices under OCGA § 51-1-43 (c) (1) of the Act. The court found further that there was no evidence that the roller skating surfaces were not maintained according to the safety standards ordinarily accepted in the industry or that Rigby's had breached any duty to maintain safe premises. This appeal followed.

---

[2] See *Petrosky v. Embry Crossing Condo. Assn., Inc.*, 284 Ga. App. 354 (1) (643 SE2d 855) (2007).

"Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. We review a trial court's grant of summary judgment de novo, construing the evidence and all reasonable inferences in favor of the nonmovant."[3] Further, "'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and . . . summary judgment is granted only when the evidence is plain, palpable, and undisputed."[4] With these guiding principles in mind, we turn now to Berrian's claims of error.

1. Berrian argues that the trial court erred in applying the Act as a bar to her claim. We disagree.

Subsection (e) of the Act provides that "[e]ach person who participates in roller skating in a roller skating center accepts the risks that are inherent in that activity insofar as the risks are obvious and necessary."[5] Subsection (d) of the Act requires

---

[3] (Citation omitted.) *Evans v. Sparkles Mgmt., LLC*, 290 Ga. App. 458 (659 SE2d 860) (2008).

[4] *Robinson v. Kroger Co.*, 268 Ga. 735, 748 (2) (b) (493 SE2d 403) (1997).

[5] OCGA § 51-1-43 (e).

each "roller skater" in a "roller skating center" to, inter alia, read all posted signs and warnings, maintain a proper lookout to avoid other roller skaters and objects, and know the limits of one's ability and skate within those limits.[6]

> In construing a statute, we look at its terms, giving words their plain and ordinary meaning, and where the plain language of a statute is clear and susceptible of only one reasonable construction, we must construe the statute according to its terms. In construing language in any one part of a statute, a court should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole. Statutory construction is a question of law, which we review de novo.[7]

(a) Berrian first contends that the Act did not apply because Rigby's was not a "roller skating center" but was an entertainment complex with an arcade, concession area, bowling alley, and DJ booth.

The Act defines a "[r]oller skating center" as "a building, facility, or premises which provides an area specifically designed to be used for roller skating for the public."[8]

---

[6] OCGA § 51-1-43 (d) (2), (3), (4).

[7] (Citations and punctuation omitted.) *Baxter v. Tracie McCormick, Inc.*, 360 Ga. App. 445, 446-447 (861 SE2d 406) (2021).

[8] OCGA § 51-1-43 (b) (3).

Although patrons at Rigby's, which contained attractions other than a roller skating rink, were allowed to skate throughout the complex, including on the carpeted areas, Berrian does not dispute that the facility provided a rink that was specifically designed to be used for roller skating. Thus, under the plain and ordinary meaning of the statute,[9] Rigby's was a "roller skating center" for purposes of the Act.

(b) Berrian also argues that the Act does not apply because she was there to chaperone a group of students and was merely a "spectator" and not a "roller skater" at the time of her fall.

The Act defines "[r]oller skater" as "a person wearing roller skates while that person is in a roller skating center for the purpose of roller skating."[10] By contrast, a "'[s]pectator' means a person who is present in a roller skating center only for the purpose of observing skating activity, whether recreational or competitive."[11]

---

[9] See *Holcomb v. Long*, 329 Ga. App. 515, 518-519 (1) (765 SE2d 687) (2014) (affording the statutory text its plain and ordinary meaning in interpreting Georgia's Injuries from Equine or Llama Activities Act, OCGA § 4-12-1 et seq., and the limitation of civil liability contained therein).

[10] OCGA § 51-1-43 (b) (2).

[11] OCGA § 51-1-43 (b) (4).

There is no dispute that, at the time of the incident, Berrian had rented and was wearing roller skates in a rolling skating center and was headed toward the rink. Based on her own deposition testimony, she was not present "*only* for the purpose of observing skating activity[.]"[12] Moreover, the fact that she had not yet reached the rink at the time of her fall is irrelevant because the statute makes no such distinction. The trial court thus did not err in finding that, Berrian, who had "put on roller skates and was steps from entering the actual rink," was a "roller skater," rather than a "spectator," under the plain language of the Act.[13] Accordingly, she "accept[ed] the risks that are inherent in that activity insofar as the risks are obvious and necessary."[14]

2. Berrian next argues that the trial court erred in granting summary judgment because a genuine issue of material fact existed as to whether Rigby's complied with the Act.

The Act required Rigby's, as the operator of a roller skating center, to conspicuously post and maintain notices containing the duties of roller skaters and

---

[12] (Emphasis supplied.) OCGA § 51-1-43 (b) (4).

[13] See *Atlanta Independent School System v. Atlanta Neighborhood Charter School, Inc.*, 293 Ga. 629, 631 (748 SE2d 884) (2013).

[14] OCGA § 51-1-43 (e).

6

spectators, comply with industry safety standards, and maintain skating equipment and surfaces.[15] "[A]n operator who violates the[se] provisions . . . shall be liable in a civil action for damages for that portion of the loss or damage resulting from the violation."[16]

(a) Berrian contends that a genuine issue of material fact existed as to whether Rigby's conspicuously posted and maintained notices, as required by OCGA § 51-1-43 (c) (1) and (4).

The trial court did not err in finding that Rigby's "properly posted all necessary notices outlining the duties of skaters and spectators." Subsection (c) of the Act required Rigby's to "[p]ost the duties of roller skaters and spectators as prescribed in [the Act] in conspicuous places"[17] and to "[m]aintain the stability and legibility of all required signs, symbols, and posted notices."[18]

The record shows that, at the time of Berrian's fall, a large sign was posted at the entry of Rigby's with large letters at the top in all capital letters saying "PLEASE

---

[15] See OCGA § 51-1-43 (c).

[16] OCGA § 51-1-43 (f).

[17] OCGA § 51-1-43 (c) (1).

[18] OCGA § 51-1-43 (c) (4).

READ." The sign referenced the Act and had a large subheading titled "Duties & Responsibilities of Roller Skaters[.]" The sign then listed as bullet points roller skaters' responsibilities from subsection (d) of the Act. Then, in large bolded letters, the sign included the acceptance of risk language from subsection (e) of the Act.

Two additional warning signs were posted inside the rink. One simply advised: "NOTICE: SKATE AT YOUR OWN RISK." The other sign (with the heading "! ATTENTION !") listed four warnings set out in bullet points, specifically warning that falling was a normal part of roller skating and that roller skaters assumed the risk of falling that could result in injury. Two additional signs were posted for employees, outlining the policies for "Skate Procedures" and "Skate Repairs."

Berrian appears to argue that there is a factual dispute as to whether the signs were posted in conspicuous places within the meaning of the Act. Based on the record, the trial court did not err in finding as a matter of law that Rigby's had properly posted

all necessary notices.[19] And, although she argues that there is no evidence that anyone pointed out the signs to her, the Act contains no such requirement.[20]

(b) Berrian also contends that there was a genuine issue of material fact as to whether Rigby's properly inspected and maintained its skating surfaces and equipment.

Subsection (c) of the Act requires each operator of a roller skating center to comply with ordinarily accepted industry safety standards generally and specifically with regard to maintaining roller skating equipment and roller skating surfaces.[21] The record shows that Rigby's had a general practice to be "on the lookout" for hazards on the premises such as excessive wear and tear and holes in the carpet. Rigby's also required its employees to inspect the facility in its entirety each morning to ensure that there were no safety concerns or issues that needed to be addressed. Rigby's

---

[19] See OCGA § 9-11-56 (e) ("When a motion for summary judgment is made and supported as provided in this Code section, an adverse party may not rest upon the mere allegations or denials of his pleading, but [her] response, by affidavits or as otherwise provided in this Code section, must set forth specific facts showing that there is a genuine issue for trial. If [s]he does not so respond, summary judgment, if appropriate, shall be entered against [her]."); *Berrell v. Hamilton*, 260 Ga. App. 892, 896 (581 SE2d 398) (2003) ("On summary judgment, when the moving party makes a prima facie showing of entitlement to judgment as a matter of law, the burden then shifts to the respondent to come forward with rebuttal evidence.").

[20] See OCGA § 51-1-43 (c) (1).

[21] See OCGA § 51-1-43 (c) (2), (3).

additionally had a policy in place to ensure that skates were appropriately inspected and either repaired or replaced.

In granting summary judgment, the trial court found that there was no evidence that the roller skating surfaces were not maintained according to industry safety standards.[22] Berrian argues that Rigby's was required to produce expert testimony on the industry standards to show that it complied with subsection (c) of the Act. We do not, however, have to determine whether these procedures were adequate because, as explained below, there is no evidence in the record that any "portion of the loss or damage" resulted from any violation of the Act.

The record shows that Berrian gave a statement on the day of the injury that it was "all her fault." In her deposition, Berrian testified that she did not know what caused her to fall. Although she speculated that fibers from the worn carpet may have gotten caught in her skates, she testified that she did not know if her skates were caught in the carpet or if there were any carpet fibers in the skates after her fall. She also

---

[22] The trial court did not address Berrian's claim that the roller skates were defective, but there was no evidence in the record to support this claim.

speculated that liquid on the floor caused her to fall,[23] but she testified that she did not remember if her clothes were at all wet when she got up after her fall.[24]

When her own attorney questioned her and asked whether she thought the worn carpet played any role in her fall, Berrian testified: "I felt like it had got trapped in the wheel of the skate and that's why I couldn't move it and it kind of grabbed me once I was skating off." "Although the trial court here did not expressly address this issue in [its] summary judgment order, [the] ruling in [Rigby's] favor implies that [the court] disregarded [Berrian's] contradictory testimony. We cannot say that this ruling is clearly erroneous."[25] Berrian thus failed to show causation as a matter of law.[26]

---

[23] See *Luckett v. Sparkles of Gwinnett, Inc.*, 363 Ga. App. 462, 464 (1) (871 SE2d 463) (2022) ("A plaintiff who alleges she slipped on a foreign substance must present some evidence of a foreign substance on the ground where she slipped.") (citation and punctuation omitted.).

[24] Cf. id. at 465 (1) (reversing summary judgment where the plaintiff presented evidence that a skating rink was slick, that it was a humid and moist night and the air conditioner was not on inside the rink, and that the bottom of her clothing appeared to have moisture on it immediately after her fall).

[25] *Cottingham v. Sapp*, 344 Ga. App. 651, 653 (2) (811 SE2d 442) (2018); see also id. at 652-653 (2) ("In each case, whether on motion for summary judgment or at trial, it must be decided if the testimony of a party-witness is contradictory. On summary judgment this is a question for the judge to decide. Further, under the rule set forth in *Prophecy*, a trial court faced with a party's self-contradictory sworn testimony must construe the testimony against that party on a motion for summary judgment, unless he or she offers a reasonable explanation for the contradiction. Significantly,

Although the plaintiff is entitled to the benefit of all reasonable inferences to be drawn from the evidence, such inferences cannot be based on mere conjecture or possibility or upon evidence which is too uncertain or speculative. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough.[27]

Accordingly, the trial court did not err in granting summary judgment.[28]

*Judgment affirmed. Barnes, P. J., and Land, J. concur.*

---

whether a reasonable explanation has been offered is a question of law for the trial court, and we must uphold a trial judge's determination on the issue unless it is clearly erroneous.") (citing *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680) (1986); additional citation and punctuation omitted).

[26] See *Imperial Investments Doraville, Inc. v. Childers*, 303 Ga. App. 490, 492-493 (1) (693 SE2d 834) (2010) (reversing the denial of a directed verdict after a jury found in favor of a plaintiff who did not know what caused him to trip).

[27] (Citations and punctuation omitted.) *Canaan Land Properties, Inc. v. Herrington*, 330 Ga. App. 17, 20 (1) (766 SE2d 493) (2014) (reversing the denial of summary judgment because "[a]though [the plaintiff] allege[d] that his fall was caused by a static condition — 'uneven pavement' or 'some sort of hole' that caused the [shopping] cart 'to dip an then flip over,' and that a wheel 'became lodged in a hole' — he ha[d] not shown more than a mere possibility that such a defect caused him to fall").

[28] See *First Communities Mgmt., Inc. v. Holmes*, 353 Ga. App. 409, 410-411 (2) (837 SE2d 717) (2020) (reversing the denial of summary judgment where the plaintiff speculated that there was water that caused her to fall but cited no evidence supporting such a reference).

12