**THIRD DIVISION
DOYLE, P. J.,
REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**August 31, 2022**

# In the Court of Appeals of Georgia

A22A0856. CALLAWAY GARDENS RESORT, INC. et al. v.
  GRANT et al.

PHIPPS, Senior Appellate Judge.

Hazel Holder died as a result of injuries she sustained when she fell while walking on a sidewalk at the Callaway Gardens Resort. Her surviving children and representatives of her estate sued Callaway Gardens Resort, Inc., and the Ida Cason Callaway Foundation (collectively, "Callaway"), seeking damages for Holder's injuries and death. Callaway now appeals from the denial of its motion for summary judgment and the grant of partial summary judgment to the plaintiffs. Callaway contends that it, rather than the plaintiffs, was entitled to summary judgment on the issues of causation and the open and obvious nature of the alleged hazard. For the

reasons that follow, we reverse the grant of partial summary judgment to the plaintiffs and affirm the denial of summary judgment to Callaway.

The record shows that, in March 2017, 80-year-old Holder visited Callaway Gardens with several family members, including her daughter Cynthia Grant. At the time, Holder was using a walking cane. Early one afternoon, as Holder and Grant walked along a paved sidewalk they had not previously traversed, Holder suddenly "fell forward [and] slightly to her left" and landed on the pavement. After she fell, Holder sat up and said, "[O]h, oh, I just caught my toe on that sidewalk[,] and down I went."[1] Grant then "turned back" and saw a height differential in a sidewalk expansion joint, one side of which, according to Grant, "was raised significantly." When asked in a deposition whether anyone pointed out the defect to Callaway personnel, Grant testified that Holder told a Callaway security guard, "[T]hat's what I caught my foot on."

Grant — who had been walking on her mother's right side before her mother fell — did not see Holder's foot catch on the sidewalk. Grant testified in her deposition that, after she sat down to help her mother, she had no difficulty seeing the

---

[1] Callaway does not challenge the admissibility of Holder's statements in its appellate briefs. See generally OCGA § 24-8-803 (1)-(2).

2

height differential. She added, however, "Not being above it looking down at it, you could tell," whereas when one is walking, "you just, you see it's just a sidewalk." Holder suffered a head injury as a result of the fall and died the next day at a hospital.

Grant and her siblings, as Holder's surviving children, and Grant and one of her sisters, as representatives of Holder's estate, sued Callaway, alleging that its negligence in failing to keep the grounds of the resort in a safe condition caused Holder's fall and resulting injuries and death. Following discovery, Callaway moved for summary judgment, arguing, as relevant to this appeal, that the sidewalk height differential was an open and obvious static condition and that, regardless, the plaintiffs failed to establish that the defect caused Holder's fall. The plaintiffs thereafter cross-moved for partial summary judgment on all issues other than damages.

The trial court denied Callaway's motion for summary judgment and granted partial summary judgment to the plaintiffs. As relevant here, the court concluded that, through the deposition testimony of its witnesses, Callaway admitted that the uneven sidewalk (a) was a hazardous condition that was not open and obvious and (b) caused Holder's fall. This appeal followed.

"We review de novo a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant." *Henry v. Griffin Chrysler Dodge Jeep Ram*, 362 Ga. App. 459, 460 (868 SE2d 827) (2022).

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. The burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the movant meets this burden, the nonmovant cannot rest on his pleadings, but rather must point to specific evidence giving rise to a triable issue.

Id. at 460-461 (citations and punctuation omitted); see OCGA § 9-11-56 (c), (e). "Furthermore, while a movant's evidence is to be carefully scrutinized, a respondent's evidence is to be treated with indulgence." *Walker v. Sapelo Island Heritage Auth.*, 285 Ga. 194, 197 (2) (674 SE2d 925) (2009) (citation and punctuation omitted). "Because this opinion addresses cross-motions for summary judgment, we will construe the facts in favor of the nonmoving party as appropriate." *Plantation at Bay Creek Homeowners Assn. v. Glasier*, 349 Ga. App. 203, 204 (825 SE2d 542) (2019) (citation and punctuation omitted).

1. Callaway first contends that (a) the trial court erred by holding that the uneven sidewalk caused Holder's fall and (b) to the contrary, Callaway is entitled to summary judgment because there is insufficient evidence of causation. We agree with the first proposition but reject the second.

To state a cause of action for negligence in Georgia, "a plaintiff must show four elements: a duty, a breach of that duty, causation and damages." *Goldstein, Garber & Salama, LLC v. J. B.*, 300 Ga. 840, 841 (1) (797 SE2d 87) (2017) (citation and punctuation omitted); accord *Wilcher v. Redding Swainsboro Ford Lincoln Mercury*, 321 Ga. App. 563, 565-566 (1) (743 SE2d 27) (2013). Thus, "[c]ausation is always an essential element in slip or trip and fall cases." *Canaan Land Properties v. Herrington*, 330 Ga. App. 17, 19 (1) (766 SE2d 493) (2014) (citation and punctuation omitted). And "[t]o recover damages in a tort action, a plaintiff must prove that the defendant's negligence was both the 'cause in fact' and the 'proximate cause' of the injury." *Atlanta Obstetrics and Gynecology Group v. Coleman*, 260 Ga. 569, 569 (398 SE2d 16) (1990). Here, while Callaway nominally frames this issue as one of "proximate cause," the substance of the parties' arguments (and the trial court's rulings) instead implicate cause in fact. Compare id. at 571 (1) (a) ("Causation, or cause 'in fact,' is the determination that the defendant's acts *caused* a claimed

5

injury.") (Weltner, J., concurring specially), with *McAuley v. Wills*, 251 Ga. 3, 7 (5) (303 SE2d 258) (1983) (distinguishing between cause in fact and proximate cause, which "is in the nature of a policy decision" that addresses whether "the defendant's conduct and the plaintiff's injury are too remote for the law to countenance a recovery").

On a motion for summary judgment addressing causation, while the nonmovant "is entitled to the benefit of all reasonable inferences to be drawn from the evidence, such inferences cannot be based on mere conjecture or possibility or upon evidence which is too uncertain or speculative." *Canaan Land Properties*, 330 Ga. App. at 20 (1) (citation and punctuation omitted). Thus, "[w]here the plaintiff does not know of a cause or cannot prove the cause, there can be no recovery because an essential element of negligence cannot be proven. . . . [W]hen . . . the probabilities are at best evenly balanced it is appropriate for the court to grant summary judgment to the defendant." Id. at 19 (1) (citation and punctuation omitted). In other words, to survive summary judgment, a plaintiff "must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." *J. H. Harvey Co. v. Reddick*, 240 Ga. App. 466, 468 (1) (a) (522 SE2d 749) (1999) (citation and punctuation omitted). To

do so in a case involving a fall, a plaintiff must point to "some evidence beyond speculation that a condition of the premises caused the fall." *Bryan Bank & Trust v. Steele*, 326 Ga. App. 13, 15 (1) (755 SE2d 828) (2014) (citation, punctuation, and emphasis omitted). Nevertheless, circumstantial evidence that raises a reasonable inference of the cause of a fall may be sufficient to survive summary judgment. *Shepherd v. Holmes*, 184 Ga. App. 648, 649 (2) (362 SE2d 396) (1987).

(a) *Grant of summary judgment to plaintiffs*. Viewed in the light most favorable to Callaway, see *Henry*, 362 Ga. App. at 460, there are disputed factual issues as to whether the sidewalk condition caused Holder's fall. In its holding to the contrary, the trial court determined that: (i) Callaway admitted that Holder "did nothing to cause or contribute to her fall"; and (ii) Callaway's witnesses "admitted the hazard caused Ms. Holder's fall." The record does not support these conclusions.

In support of its determination that Callaway admitted that Holder did not cause or contribute to her fall, the trial court cited the deposition testimony of Robert Seymour, who was a Callaway Gardens security officer in March 2017, and Wendy Nixon, Callaway Gardens Resort, Inc.'s Rule 30 (b) (6) representative.[2] It is undisputed, however, that neither witness was present when Holder fell. And in that

_____

[2] See OCGA § 9-11-30 (b) (6).

7

regard, neither witness expressed an opinion on whether Holder caused or contributed to her fall: Seymour testified only that he did not know whether Holder did anything that caused her to fall, and Nixon similarly testified only that she was unaware of anything that Holder may have done to cause or contribute to her fall. That testimony plainly is insufficient to establish, as a matter of law, that Holder in fact did not cause or contribute to her fall.

In support of its determination that Callaway's "witnesses" admitted that "the hazard caused" Holder's fall, the trial court cited only Nixon's deposition testimony. Once again, however, Nixon made no such admission. She rather testified only that Callaway is unaware of any facts indicating either that Holder was the cause of her fall or that any party other than Callaway caused or contributed to Holder's fall. That equivocal testimony similarly carries insufficient probative value to establish causation as a matter of law.

The plaintiffs' contention that Holder's statement that she "caught" her toe on the sidewalk establishes causation is misplaced. While that statement would authorize a jury to find in the plaintiffs' favor, it does not demand such a finding as a matter of law. In that vein, the record evidence shows that, at the time of her fall, Holder used a walking cane and suffered from Parkinson's disease; she also had a stroke in the

8

weeks before her visit to Callaway and experienced balance issues and multiple falls in the years preceding her death.[3] It is for a jury to decide whether the sidewalk height differential — rather than one or more other factors that potentially may have affected Holder's balance — caused her fall. For that reason, the plaintiffs' reliance on the testimony of Seymour and Nixon that they are unaware of any possible causes for Holder's fall other than the sidewalk defect also is unavailing, setting aside the fact that neither witness was present at the time of the fall.

Seeking to bolster their causation argument, the plaintiffs also highlight the following evidence of causation: (i) the proximity of the sidewalk defect to Holder's fall; (ii) the sudden and unexpected nature of the fall; (iii) Grant's conclusion that the defect caused the fall; and (iv) the conclusion of a Callaway security officer that the "probable cause" of Holder's fall was that she "tripped on the concrete sidewalk."

---

[3] The plaintiffs' claims that Holder's Parkinson's disease was being adequately managed do little to establish causation, and instead simply implicate one factor that a jury may take into consideration in deciding causation. And the plaintiffs' assertion that Holder's prior falls are inadmissible character evidence under OCGA § 24-4-404 (a) is misplaced, as evidence of one's physical stability issues has nothing to do with one's "character or a trait of character." See 22B Charles Alan Wright et al., Federal Practice and Procedure — Federal Rules of Evidence § 5233.2 (2d ed. Apr. 2022 update) ("A person's physical characteristics do not qualify as 'character.'") (addressing the analogous federal rule of evidence); see also *Mixer v. Tarrantine Mkt.*, 1999 ME 27, 724 A2d 614, 616 (II) (Me. 1999) ("Evidence of a balance problem . . . is not character evidence; it is evidence of a physical condition.").

Once again, however, while this largely circumstantial evidence — along with Holder's statement about the cause of her fall — is sufficient to create a jury question as to causation, it does not conclusively establish causation as a matter of law.

For each of the above reasons, the trial court erred when it granted partial summary judgment to the plaintiffs on the issue of causation, and we reverse the trial court's ruling in that regard.

(b) *Denial of summary judgment to Callaway.* Viewed in the light most favorable to the plaintiffs, see *Henry*, 362 Ga. App. at 460, there similarly remain disputed factual issues as to whether the sidewalk condition caused Holder's fall. In that regard, the plaintiffs have pointed to "some evidence beyond speculation that a condition of the premises caused the fall." *Bryan Bank & Trust*, 326 Ga. App. at 15 (1) (citation, punctuation, and emphasis omitted). In addition to Holder's statement identifying "that sidewalk" as the surface on which she "caught [her] toe," there is also evidence that the height differential was close enough to the fall that Grant saw it when she "turn[ed] around [to] look" after Holder fell, and, in its appellate brief, Callaway identifies no other hazards in the vicinity on which Holder could have tripped.

Callaway, however, maintains that Grant's testimony that Holder was walking to Grant's left shows that the height differential could not have caused Holder's fall because the defect — according to Callaway — was on the right side of the sidewalk. This contention is unavailing for two reasons. First, Callaway identifies no record evidence definitively establishing that the hazard was on the right side of *Holder's and Grant's path of travel* along the walkway.[4] Second, and more importantly: (a) photographs in the record appear to show that the defect at issue is approximately equidistant from both the closest sidewalk edge and the middle of the sidewalk[5] (and not, as Callaway claims, on the "far right-hand side of the sidewalk"); and (b) Callaway points to no record evidence foreclosing the possibility that Grant was walking very close to the edge of the sidewalk or even off of the edge of the sidewalk as she walked next to Holder.[6]

---

[4] While the parties' arguments suggest that it may be obvious to them which direction Holder and Grant were walking — as viewed from the perspective shown in photographs in the record — they point to no record evidence or stipulation establishing that fact in their appellate briefs.

[5] The photograph reproduced in Callaway's brief adds nothing to its argument in this respect, as the image does not show both edges of the walkway.

[6] Callaway's paradoxical claim that Grant "successfully traversed this alleged defect and did not fall" either assumes that the defect was wide enough to have been

Moreover, contrary to Callaway's assertions, this is not a case in which the alleged hazard was merely "in the area" of the injury. Rather, viewed in the light most favorable to the plaintiffs, a reasonable jury would be entitled to construe Holder's statement that she "caught" her toe on "*that* sidewalk" as identifying a specific hazard — at the very location of her fall — that caused her to fall. (Emphasis supplied.) Compare *Riggs v. Highland Hills Apts.*, 334 Ga. App. 247, 250-251 (2) (a) (779 SE2d 20) (2015) (physical precedent only) (a jury question remained as to whether a hole in a walkway covered by a rug — rather than the plaintiff's shoes gripping the rug — caused the plaintiff to fall, where the plaintiff testified that "as soon as he stepped on the carpet, the ground gave in and . . . he fell in the chipped concrete") (punctuation omitted), with *Bryan Bank & Trust*, 326 Ga. App. at 15-16 (1) (concluding that the defendant was entitled to summary judgment where the plaintiff "did not know how she fell or what caused her to fall" and could not "aver that she tripped or even that she struck her foot against something"), and *Imperial Investments Doraville v. Childers*, 303 Ga. App. 490, 492-493 (1) (693 SE2d 834) (2010) (the plaintiff's testimony "that he 'tripped' rather than simply that he 'fell'" — without more — was

---

in both women's path of travel or ignores Grant's testimony that she and Holder were walking side by side when Holder fell.

insufficient to establish that "'wrinkly' carpet or duct tape 'in the area'" was the cause in fact of his fall). Grant's testimony that she saw the height differential in the sidewalk expansion joint immediately after Holder identified "that sidewalk" as the surface on which she caught her toe similarly would add additional support to a jury finding that the defect was located close enough to Holder's fall to have caused it.

And while Callaway claims that Holder's medical conditions "are a far more probable cause of her fall," on the facts of this case, those are questions for a jury to weigh, not for a court to adjudicate on summary judgment. Where, as here, "reasonable minds can differ on the cause of the injury, the case is not plain, palpable, and indisputable and it should go to the jury." *Jones v. Holland*, 333 Ga. App. 507, 508 (773 SE2d 797) (2015) (citation and punctuation omitted); accord *Walker v. Bank of America*, No. 1:13-CV-704-MHC, 2014 WL 12573538, at *3 (III) (A) (N.D. Ga. Dec. 15, 2014). Viewing the evidence in the light most favorable to the plaintiffs, a jury would be entitled to find that the probabilities are not "evenly balanced," *Canaan Land Properties*, 330 Ga. App. at 19 (1) (citation and punctuation omitted), and that the sidewalk defect was more likely to have caused Holder's fall than any of her medical issues. The trial court therefore did not err when it denied summary judgment to Callaway on this issue, and we affirm its ruling in that regard. Compare id. at 19-21

(1) (concluding that the defendant was entitled to summary judgment where the plaintiff claimed that a hole in the defendant's parking lot caused his shopping cart to turn and trip him but acknowledged that trash on the ground also could have jolted his cart and that he "could not be certain exactly what caused the cart to flip over") (punctuation omitted), with *J. H. Harvey Co.*, 240 Ga. App. at 467 & 469 (1) (a) (holding that the defendant was not entitled to summary judgment where, although the plaintiff "could not positively state" what caused her to fall, there was evidence that the floor where she fell was "slippery," there were fruit skins on the floor in the proximity of her fall, and the plaintiff did "not recall seeing anything else on the floor that might have caused her to fall"), *Bramblett v. Hansel-Scales, Inc.*, 200 Ga. App. 722, 722-723 (1)-(2) (409 SE2d 280) (1991) (where the plaintiff did not know what caused her to fall, evidence of causation could be determined from surrounding circumstances), and *Evans v. Mathis Funeral Home*, 996 F2d 266, 269 (II) (B) (1) (11th Cir. 1993) (under Georgia law, "[i]t is not necessary that [the injured party] herself know what caused her to fall; rather, she need only establish a causal connection between the condition and the injury, and this causal connection may be established from surrounding circumstances").

14

2. Callaway also contends that the sidewalk defect was an open and obvious static condition, that the trial court's ruling to the contrary was erroneous, and that Callaway, rather than the plaintiffs, therefore was entitled to summary judgment on this issue. We again conclude that neither party was entitled to summary judgment.

> An owner or occupier of land has a duty of exercising ordinary care to keep the premises and approaches safe for any invitees.[7] However, an owner or occupier of land is not an insurer of an invitee's safety.
>
> . . .
>
> The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted.[8]

*Rentz v. Prince of Albany*, 340 Ga. App. 388, 389 (1) (797 SE2d 254) (2017) (citations and punctuation omitted); see also generally OCGA § 51-3-1.

---

[7] It is undisputed that Holder was an invitee of Callaway at the time of her fall. See, e.g., *Barton v. City of Rome*, 271 Ga. App. 858, 860 (610 SE2d 566) (2005) ("Pursuant to OCGA § 51-3-1, owners or occupiers of land owe a statutory duty to their customers, as invitees, to exercise ordinary care to keep the premises and approaches reasonably safe . . . .").

[8] Callaway does not challenge the trial court's finding that it had knowledge of the hazard.

"A static condition is one that does not change and is dangerous only if someone fails to see it and walks into it. If nothing obstructs the invitee's ability to see the static condition, the proprietor may safely assume that the invitee will see it and will realize any associated risks." *Rentz*, 340 Ga. App. at 390 (1). "An uneven walkway is a static condition." *D'Elia v. Phillips Edison & Co.*, 354 Ga. App. 696, 698 (839 SE2d 721) (2020). In that regard,

> an invitee is not entitled to an absolutely smooth or level way of travel. It is common knowledge that small cracks, holes and uneven spots often develop in pavement; and it has been held that where there is nothing to obstruct or interfere with one's ability to see such a static defect, the owner or occupier of the premises is justified in assuming that a visitor will see it and realize the risk involved.

*James v. Sirmans*, 299 Ga. App. 262, 263 (683 SE2d 354) (2009) (citation and punctuation omitted); accord *D'Elia*, 354 Ga. App. at 699 ("There is no duty to warn of the obvious.") (citation and punctuation omitted). Thus, "[w]here an obstruction is perfectly obvious and apparent, so that one looking ahead would necessarily see it, the fact that the plaintiff merely failed to look will not relieve her from the responsibility for her misadventure." *D'Elia*, 354 Ga. App. at 700 (citation and punctuation omitted). The issue here, then, is whether the evidence is "plain,

16

palpable, and undisputed" that nothing obstructed Holder's ability to see the uneven sidewalk and that the hazard "was or should have been visible to her." *Rentz*, 340 Ga. App. at 391 (2) (citation and punctuation omitted).

(a) *Grant of summary judgment to plaintiffs.* Viewed in the light most favorable to Callaway, there are disputed factual issues as to whether the sidewalk condition was open and obvious. The trial court's finding to the contrary — i.e., that the defect was not open and obvious — is based on the testimony of three witnesses: Nixon; Marc Bauer, Callaway's vice president of resort operations; and Amber Treadwell, a former Callaway security officer and groundskeeper. Each witness testified that the defect was not open and obvious in photographs they were shown during their depositions. It is undisputed, however, that these witnesses were not present when Holder fell. Their opinions as to whether a sidewalk defect depicted in a photograph was open and obvious therefore do not conclusively establish whether the defect was open and obvious to a person approaching the defect on the day in question under all of the circumstances present at that time. In that vein, none of the photographs in the record purporting to show the height differential conclusively establish that, at the time of Holder's fall, the defect was not objectively open and obvious, under all of the attendant circumstances, so as to put a reasonable person approaching it on notice

17

of the danger it posed to pedestrians. We therefore reject the plaintiffs' contention that "Callaway itself admits that its trip hazard was not open and obvious to invitees like Mrs. Holder." (Capitalization omitted.)

The plaintiffs also seek to rely on the testimony of Grant and her sister Alisa Moring that the defect was difficult to see. While a jury certainly would be entitled to credit that testimony, when viewed in the light most favorable to Callaway, it does not demand a finding, as a matter of law, that the defect was not open and obvious, particularly in light of the photographs of the defect, which arguably could be viewed to support findings in favor of either Callaway or the plaintiffs. Consequently, the trial court erred when it granted partial summary judgment to the plaintiffs on the issue of whether the sidewalk defect was open and obvious, and we reverse the trial court's ruling in that regard.

(b) *Denial of summary judgment to Callaway.* For the reasons stated above in Division 2 (a), when viewed in the light most favorable to the plaintiffs, the evidence is disputed on the question of whether the sidewalk condition was open and obvious. Where, as here, "[u]nder the facts of record and the inferences drawn therefrom favorable to [the plaintiffs], we cannot find that [Holder's] ability to see the [sidewalk defect] was, as a matter of fact, plain, palpable, and undisputed," a jury question

18

remains on that issue. *Thomas v. Exec. Committee of the Baptist Convention of Ga.*, 262 Ga. App. 315, 319-320 (c) (585 SE2d 217) (2003) (citation and punctuation omitted). We therefore affirm the trial court's denial of summary judgment to Callaway on this question.

*Judgment affirmed in part and reversed in part. Doyle, P. J., and Reese, J., concur.*